**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Criminal No. 22-cr-223 (NEB/DTS)**

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>vs.<br><br>**Abdirahman Mohamud Ahmed**,<br><br>            Defendant. | **Memorandum of Law in Opposition to Government's Motion to Continue Trial** |

## INTRODUCTION

The government seeks to continue Mr. Ahmed's case because it has two trials in quick succession. But both cases are years old, and at least with respect to Abdi's, the government has long known it would go to trial. Respectfully, if the government wields its awesome power to charge, it must accept the consequences that flow from it. And any staffing challenges related to Operation Metro Surge should not change the analysis, particularly given the recent comments by the U.S. Attorney that his office "ha[s] more than adequate staffing to carry out the fraud (investigations)."[1] The Court should therefore take Mr. Rosen at his word and deny the motion.

---

[1] Eric Rasmussen, *New court filing renews question of 'adequate' staffing of prosecutors to fight fraud*, KSTP EYEWITNESS NEWS (Mar. 9, 2026).

## BACKGROUND

### 1) The posture of Abdi's case.

In September 2022, the government charged Abdi and 14 others with various fraud-related crimes.[2] Since then, everyone except Abdi has either pleaded guilty or lost at trial.[3] Despite this, Abdi has maintained his innocence and insists on going to trial. This insistence is at least partially the reason why Abdi parted ways with his previous counsel.[4] In short, from day one, Abdi has made it clear to everyone involved in this case that he wants his trial. So after several continuances, and after Abdi's current counsel got up to speed on the case, the Court in January 2026 set the "date certain" for trial as June 8, 2026.[5] Meaning at the time it filed this motion, the government had known about the June 8th trial date for 53 days.

### 2) The posture of the Mohamed case.

In January 2024, the government charged seven people with various fraud-

---

[2] Doc. 1.

[3] Docs. 183, 494, 495, 541, 560, 579, 585, 669, 684, 736, 750.

[4] Docs. 660, 674.

[5] Doc. 790. In its motion, the government stated that "[o]n March 27, 2024, the Court set Mr. Ahmed's trial to begin on June 8, 2026." Doc. 808 at 2. While Abdi wishes this were true, as it would strengthen his opposition to the motion, it is not. The Court set the June 8th trial date on January 16, 2026. *See* Doc. 790.

2

related crimes.[6] After several continuances, the Court in July 2025 entered an order setting the "date certain" for trial as April 20, 2026.[7] Meaning at the time it filed this motion, the government had known about the April 20th trial date for 245 days.

### 3) Operation Metro Surge.

Finally, the government has seen a significant shakeup in staffing due to the overreach of Operation Metro Surge. This need not be recounted here, other than to note that several prosecutors who worked on Abdi's case—and all Feeding Our Future cases—left the U.S. Attorney's Office in January 2026. Contrary to the government's brief, their departures came *before* the Court's January 16th "date certain" order.[8] Meaning the Court knew the U.S. Attorney's Office was down these prosecutors when it made Abdi's June 8th trial a "date certain."

\*       \*       \*

---

[6] 24-cr-15, Doc. 1.

[7] *Id.*, Doc. 169.

[8] Joe Thompson and the other prosecutors who led the Feeding Our Futures cases resigned on January 13th. *See* Ernesto Londoño, *Six Prosecutors Quit Over Push to Investigate ICE Shooting Victim's Widow*, N.Y. TIMES, (Jan. 13, 2026). Thus making the government's claim that the departures occurred *after* the Court's January 16th "date certain" order false. *See* Doc. 808 at 2 ("Additionally, there have been significant staffing changes in the United States Attorney's Office *since* the January 16 trial order, including the departure of four attorneys who had previously been involved in this and the related Feeding Our Future cases.") (emphasis).

3

Given that Abdi's trial date and the Mohamed trial date will require the government to try the cases back-to-back, it moved to continue Abdi's trial. The parties conferred and, staying true to his desire to have his day in court, Abdi objected and asked for time to file a memorandum of law in opposition to the government's request. The Court agreed. This follows.

## LEGAL STANDARD

In this District, "the party who seeks a continuance must show good cause."[9] Because "'good cause' is case-by-case and subject to the discretion of the district courts," it has "no concrete definition but is analyzed by a number of factors[:]"

> (1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith.[10]

Whether "good cause" exists "hinges to a large extent on diligence, or lack thereof, of the moving party."[11] "Put succinctly, absent diligence, there is no 'good

---

[9] D. Minn. L.R. 6.1(a).

[10] *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2019 WL 4082945, at *2 (D. Minn. Aug. 29, 2019).

[11] *Pictorial Offset, Corp. v. Zurich Am. Ins. Co.*, 2016 WL 11653460, at *1 n.1 (D.N.J. May 24, 2016). While Abdi cites to *Pictorial Offset* and several other out-of-District cases, such citation is appropriate if it is relevant and persuasive. *See White v. Nat'l*

cause.'"[12] Examples of a lack of due diligence include failing to subpoena a material witness when the government knew trial was imminent and failing to determine in advance whether a party's testimony was necessary at a hearing.[13] Conversely, "if good cause exists—*e.g.* if the [government's] unpreparedness is not due to a lack of diligence— . . . the continuance [should be] granted."[14]

Lastly, otherwise "good cause" for a continuance can be defeated if the party seeking it makes the request with unclean hands. "[I]t is a well-trodden maxim that he who comes into equity must come with clean hands."[15] To "prevail on an unclear hands defense, . . . a defendant must show that (1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the

---

*Football League*, 756 F.3d 585, 594–95 (8th Cir. 2014) (court may apply opinions from other jurisdictions "insofar as they have persuasive value.").

[12] *Id.*

[13] *See, e.g.*, *Cunningham v. Mun. Ct.*, 62 Cal. App. 3d 153, 156 (Ct. App. 1976) ("In this case, the People knew before their material witness left on his vacation that if he were permitted to do so he would then possibly be unavailable as a witness at the trial on April 5"); *Birdwell v. Skeen*, 983 F.2d 1332, 1340 (5th Cir. 1993) ("A continuance which is granted to allow a party to ascertain whether testimony is necessary for a dismissal hearing is not based upon good cause when the party requesting the continuance could have made that determination prior to the hearing by using reasonable diligence").

[14] *Birdwell*, 983 F.2d at 1340 n.23.

[15] *United States v. Madison*, 2025 WL 3623726, at *9 (M.D. Fla. Dec. 15, 2025).

wrongdoing."[16] Courts "require the connection between the unclean-hands conduct and the matter in litigation to be very close."[17] When the plaintiff is the government, however, it "is presumed to come into court with clean hands and is entitled to the equitable relief it [seeks] unless it did something which in good conscience it should not have done, or failed to do something fair dealing required it to do."[18]

## DISCUSSION

Against this backdrop, for three reasons, Abdi believes the government's continuance request lacks the requisite "good cause" to be granted.

**1) Back-to-back trials in cases everyone knew were going to trial is not "good cause" for a continuance.**

The first and most compelling reason why "good cause" doesn't exist for the government's continuance request is how old the two cases at issue are, and how long the government has known they were set for trial. Abdi's case has been set for trial on June 8th for 53 days. The Mohamed trial has been set for trial on April 20th for 245 days. This is more than enough time for the government—the largest and

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

most powerful criminal law firm in the world—to prepare itself for successive trials. That it has failed to do so should not now be a cost borne by Abdi. As noted above, if the government makes the awesome decision to charge a person with a federal crime, then it should also accept everything that comes with it—including the possibility of back-to-back trials. To now claim a lack of preparedness for trials in cases that began in 2022 and 2024, respectively, is the same lack of diligence that other courts have found do not constitute "good cause" for a continuance.[19] Because diligence by the government here is "absent, . . . there is no 'good cause'" justifying its motion to continue Abdi's trial.[20] The Court should deny it.

### 2) Operation Metro Surge doesn't change the analysis.

The government's rebuttal to Abdi's claim that it lacked diligence in preparing for back-to-back trials is spelled out in its continuance motion:

> Additionally, there have been significant staffing changes in the United States Attorney's Office since the January 16 trial order, including the departure of four attorneys who had previously been involved in this and the related Feeding Our Future cases. As such, the undersigned AUSAs have taken responsibility for all Feeding Our Future prosecutions, including the *Mohamed* trial and Mr. Ahmed's trial.[21]

---

[19] *See Cunningham*, 62 Cal. App. 3d at 156; *Birdwell*, 983 F.2d at 1340.

[20] *Pictorial Offset*, 2016 WL 11653460 at *1 n.1.

[21] Doc. 808 at 2–3.

7

In other words, the effects of Operation Metro Surge's overreach have made the prosecutors with expertise in the Feeding Our Future cases resign, and now the prosecutors who remain are not familiar enough with the files to try the Mohamed case and Abdi's case back-to-back. The Court should reject this explanation, however. And that's because the U.S. Attorney's Office's willingness to participate in Operation Metro Surge gives it "unclean hands" to later point to it as the reason it's not prepared for non-Metro Surge cases.

First, the government's wrongdoing—its participation in Metro Surge—is directly related to its continuance request.[22] Next, Abdi will be personally injured by the wrongdoing because, if the motion is granted, it will force his trial to be continued when he is ready to proceed and doesn't want it postponed.[23] Finally, the connection between Metro Surge and the requested continuance is more than "very close"—it is literally the reason for the government's motion.[24] Lastly, while the government is normally "presumed to come into court with clean hands and is entitled to the … relief it [seeks]," here it is not. And that's because its participation

---

[22] *Madison*, 2025 WL 3623726 at *9.

[23] *Id.*

[24] *Id.*

in Metro Surge is "something which in good conscience it should not have done."[25]

In sum, the government cannot have it both ways: it can either participate in Operation Metro Surge and accept the consequences of that choice, or it could have declined participation. But it cannot now point to the foreseeable consequences of Operation Metro Surge to justify its request here. The government made its bed; the Court should now make it lie in it.

### 3) The Court should take the U.S. Attorney at his word.

Finally, any lingering concern that the government's staffing issues are good cause for a continuance should be put to rest by the statements of U.S. Attorney Rosen. As noted above, when asked directly about the departures of the Feeding Our Future prosecutors, Mr. Rosen stated unequivocally that they *would not* affect his office's ability to prosecute the cases: "We have more than adequate staffing to carry out the fraud (investigations)."[26] While this no doubt conflicts with the government's motion here, unless Mr. Rosen is prepared to sign an affidavit admitting his error, the Court should take the word of the U.S. Attorney's Office's top prosecutor over that of its line attorneys. Simply put, this is a situation that lends itself to perhaps the most famous legal "gotcha" question known to lawyers and

---

[25] *Id.*

[26] *See* Eric Rasmussen, *supra* note 1.

non-lawyers alike: "Were you lying then or are you lying now?"[27] If Mr. Rosen cannot answer, the Court should take him at his word, determine there is "more than adequate" staffing to handle Abdi's trial and the Mohamed trial back-to-back, and deny the government's motion.

## CONCLUSION

For these reasons, the government's motion to continue Mr. Ahmed's trial lacks the requisite "good faith" to justify its granting. The Court should deny it.

Date:  March 16, 2026

Respectfully submitted,

Dane DeKrey (#0397334)
**RINGSTROM DEKREY PLLP**
814 Center Avenue, Suite 5
Moorhead, MN  56560
(218) 284-0484
dane@ringstromdekrey.com

---

[27] WITNESS FOR THE PROSECUTION (Billy Wilder dir., 1957). *See* Rafi Reznik, *The Auteur as Editor*, 73 STAN. L. REV. ONLINE 11, 11 (May 2020) (arguing for a different citation format for movies than the one used by the Bluebook).

10